**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

C.M., AN INDIVIDUAL,

Plaintiff,

vs.

G6 HOSPITALITY PROPERTY LLC,

Defendant.

Case No. ____________

**COMPLAINT FOR DAMAGES;**

**DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff C.M. by and through the undersigned counsel and respectfully submits her complaint for damages and makes the following averments.

## INTRODUCTION

1. This action for damages is brought by C.M. ("Plaintiff"), a survivor of sex trafficking, under the Federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595.

2. G6 HOSPITALITY PROPERTY LLC ("Defendant") was the hotel owner and hotel operator of the subject hotel premises, operating as Motel 6, located at 605 S. Regional Road, Greensboro, NC 27409 ("Greensboro Hotel"), during the relevant time period, and as such was responsible for the subject hotel during the time period Plaintiff was sex trafficked on said premises.

3. Defendant was the owner and operator of the Greensboro Hotel located at 605 S. Regional Road, Greensboro, NC 27409 during the relevant time periods.

4. Plaintiff was trafficked at 605 S. Regional Road, Greensboro, NC 27409 during 2016.

5. During the relevant time period, Defendant was owner and operator of the subject premises.

6. Plaintiff was born in April 1978.

7. Plaintiff meets the definition of a sex trafficking victim under the TVPRA. She was trafficked at the Greensboro Hotel as an adult during 2016, during which time she was induced through force, fraud, and coercion by her traffickers to engage in commercial sex with multiple buyers. Plaintiff's traffickers fostered, supplied, and exploited her heroin addiction as a means of coercion and control — invisible chains that bound Plaintiff to the trafficking venture and from which she could not free herself.

8. As a hotel owner and hotel operator of the subject property, Defendant controlled the training, policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules and guidelines for its subject property where Plaintiff was sex trafficked.

9. The passage of the TVPA in 2000 and the passage of the TVPRA in 2008 as well as numerous other legislative initiatives, put the Defendant on notice of the high likelihood of these illegal acts occurring on the subject hotel premises which, at a minimum, warranted them to be all the more vigilant and proactive in preventing this conduct.

10. Years before Plaintiff was trafficked, Defendant knew or should have known of the critical role that the hotel industry plays in enabling the sex trade industry and of the widespread national epidemic of hotel/motel sex trafficking. By 2012, training guides and videos were available through the American Hotel Lodging Association (AHLA) and ECPAT-USA and via other resources.

11. Section 1591 of the TVPRA criminalizes sex trafficking of adults by force, fraud or coercion, and of minors regardless of force, fraud, or coercion. See 18 U.S.C. § 1591. Separately, § 1595 of the TVPRA provides individuals who are victims of sex trafficking with a civil remedy against the traffickers or the beneficiaries of the sex trafficking crime. See 18 U.S.C. § 1595(a). More specifically, § 1595 provides for three distinct causes of action: (1) a claim against the trafficker who directly violated § 1591(a)(1); (2) a beneficiary claim against the trafficker who directly violated § 1591(a)(2); and (3) a beneficiary claim against a civil defendant who did not violate § 1591, but who knowingly benefited from participation in a venture which that person knew or should have known has engaged in an act in violation of the TVPRA. This is a beneficiary claim against a civil defendant.

**PARTIES**

12. Due to the sensitive, private, and potentially retaliatory nature of the allegations herein, Plaintiff proceeds by initials to protect the identity of this subject sex trafficked victim. Nationwide, similarly situated plaintiffs have proceeded by pseudonym or by their initials due to the foregoing.

13. Plaintiff is currently a resident of North Carolina.

14. At all times relevant and material, Defendant owned and operated a hotel doing business as Motel 6 at 605 S. Regional Road, Greensboro, NC 27409, and was authorized to do, licensed to do, and was doing business in the aforesaid State offering the subject hotel as a place of public lodging.

15. The principal place of business of Defendant is 4001 International Pkwy, Carrollton, TX 75007.

## JURISDICTION AND VENUE

16. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States, namely 18 U.S.C. § 1595.

17. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Count asserted in this action occurred in the judicial district where this action was brought, and/or Defendant conducts business within this District pursuant to 28 U.S.C. § 1391(b).

18. The principal place of business of Defendant G6 HOSPITALITY PROPERTY LLC is located at 4001 International Pkwy, Carrollton, TX 75007 within the Eastern District of Texas. Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391.

19. As the hotel owner and hotel operator during the relevant time period for the subject property, Defendant G6 HOSPITALITY PROPERTY LLC (headquartered at 4001 International Pkwy, Carrollton, TX 75007, within the Eastern District of Texas), controlled the training, policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules and guidelines for its subject property where Plaintiff was sex trafficked.

## CAUSE OF ACTION

**(Violation of 18 U.S.C. § 1595)**

20. Plaintiff sets forth an action for violation of 18 U.S.C. § 1595 as against Defendant.

21. At all relevant times, Defendant, as owner and operator of the subject hotel, was involved in a venture that sex trafficked Plaintiff during the relevant aforesaid time period.

22. Plaintiff was trafficked by her traffickers, including "Dre" and "Alexander," who together operated a commercial sex trafficking and drug dealing enterprise at the subject hotel premises. Plaintiff was lured into the trafficking venture by her traffickers under false pretenses.

23. Rooms were rented by the traffickers or at the direction of the traffickers at the Greensboro Hotel and used for the sex trafficking of the Plaintiff. During the relevant time period, the traffickers maintained multiple rooms at the subject hotel simultaneously for use in their commercial sex trafficking operation, which involved Plaintiff and, at times, other trafficking victims.

24. The following information regarding the rooms booked at the subject hotel that were used for the sex trafficking of the Plaintiff in violation of the TVPRA is presently within the knowledge of Defendant:

    a. The name(s) in which each room was booked or renewed;

    b. Whether cash, prepaid card, debit card or credit card was used at the time of respective booking or renewal; and

    c. Whether staff of Defendant required for each booking that the renter show their identification.

25. Defendant knowingly benefited from participation in the venture by receiving payment for the rooms rented by her traffickers (or at the direction of her traffickers) that were used for sex trafficking, including as to the Plaintiff, in violation of the TVPRA during the aforesaid relevant time periods.

26. Defendant rented rooms at the subject hotel to individuals it knew or should have known were engaged in sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

27. Defendant, through its staff at the subject premises, permitted the traffickers to continue to pay for and renew rooms rented at the subject hotel during the time that Plaintiff was being sex trafficked there in violation of the TVPRA.

28. In addition, Defendant received other financial benefit including, but not limited to, from Wi-Fi which, in part, enabled the subject sex trafficking to occur, as Plaintiff was advertised by her traffickers online through various websites, and from such Wi-Fi service Defendant, upon information and belief, received financial benefit.

29. During the relevant time period alleged herein, Defendant took part in a common undertaking or enterprise involving risk and potential profit which violated the TVPRA as to the Plaintiff herein.

30. Operating hotels and renting out rooms is an enterprise involving risk and potential profit.

31. Defendant knowingly benefited from participation in an enterprise involving risk and potential profit which violated the TVPRA as to the Plaintiff herein.

32. There was a continuous business relationship between the traffickers and Defendant at the subject hotel premises by means of rooms repeatedly rented by the traffickers (or at their direction), which rooms Defendant knew, or should have known, were being used for the sex trafficking of Plaintiff in violation of the TVPRA, and which the parties wished to continue for profit.

33. The room rental transactions were not isolated or arms-length; rather, the repeated room rental transactions which occurred during the time that Plaintiff was trafficked at the subject hotel were colored by overt indicators of sex trafficking such that Defendant knew, or should have known, that Defendant was renting rooms to individuals engaged in sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

34. Defendant participated in a venture with the traffickers at the subject hotel by repeatedly renting rooms to individuals they knew or should have known were involved in sex trafficking on the premises in violation of the TVPRA, including as to the Plaintiff herein; and in doing so facilitated the venture.

35. Defendant knowingly benefited from this venture, or enterprise, involving risk and potential profit, which was in violation of the TVPRA as to the Plaintiff herein, by receiving payment for the rooms rented by the traffickers (or at the direction of her traffickers) at the subject hotel that were used for sex trafficking, including as to the Plaintiff, during the aforesaid relevant time periods.

36. Defendant participated in a venture by operating the subject hotel and renting rooms to individuals that said Defendant knew or should have known were involved in sex trafficking, including as to the Plaintiff herein, in violation of the TVPRA.

37. Defendant participated in a venture that said Defendant knew or should have known was engaged in acts in violation of the TVPRA.

38. This Defendant knew or should have known that the undertaking or venture violated the TVPRA as to the Plaintiff.

39. Defendant knew or should have known about the nature of the sex trafficking occurring at the subject hotel and there existing, including but not limited to:

a. The presence and frequent procession of sex buyers entering and exiting the rooms where trafficking of Plaintiff was occurring at the subject hotel;

b. Plaintiff exhibited visible bruising, signs of heroin use and intoxication, and other signs of physical abuse and impairment that caused her to visibly stand out and that were observable during direct interactions with, and in the presence of, Defendant's staff;

c. Plaintiff was trafficked, at times, alongside other victims at the subject hotel in a manner consistent with an organized commercial sex trafficking operation, with the traffickers, at times, maintaining multiple rooms simultaneously for that purpose;

d. Plaintiff's traffickers possessed and used heroin and controlled Plaintiff with its use;

e. Inside the hotel rooms rented by the traffickers (or at their direction) at the subject hotel there were suspicious people and suspicious items including controlled substances, drug paraphernalia, condoms, lubricant, lingerie, and cash, which were observed by housekeeping staff or should have been so observed;

f. People, including prospective sex buyers, were observed congregating and loitering outside the doors of the rooms occupied by Plaintiff and her traffickers, in plain view of Defendant's staff;

g. Plaintiff was forced to solicit on the premises of the subject hotel, including from and immediately outside the doorways of the rented rooms, in areas open to observation by Defendant's staff;

h. Plaintiff was trafficked at the subject hotel in recurring stints over the course of 2016, resulting in a sustained and recognizable pattern of activity at the subject hotel;

i. Other commonly known sex trafficking red flags which the above captioned Defendant knew or should have known of had anti-trafficking measures been timely and properly implemented at the hotel.

40. Defendant, by and through its staff, had the opportunity to observe on a recurring basis signs and indicators of sex trafficking including items set forth in paragraph 39 above.

41. When being trafficked at the Greensboro Hotel during 2016, staff observed Plaintiff, her traffickers, as well as a frequent procession of sex buyers going in and out of the subject rented rooms, contemporaneous with other signs and indicators of trafficking occurring on the subject premises.

42. Plaintiff knows that some of the individuals that witnessed and observed red flags indicative for suspicion for sex trafficking were staff members in that the staff were readily identifiable to Plaintiff either by her knowing of the individual and/or by means of the staff wardrobe/nametag/hotel logo and/or by means of a staff member being in an employee restricted area.

43. Defendant's involvement and failure to timely and properly prevent the sex trafficking or to timely intervene regarding same was a proximate cause of the injuries Plaintiff sustained in this case including, but not limited to, being the victim of sex trafficking when at the subject hotel and suffering personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple sex buyers per day while being trafficked.

44. This Defendant, during the relevant time period, could deny accommodation and/or eject a guest for a number of reasons including, but not limited to, (1) guest visibly under the influence of drugs or alcohol, (2) guest creating a nuisance to the public; (3) guest believed to use a hotel room for unlawful purposes; (4) guest uses hotel amenities and premises for unlawful acts; (5) guest violates other rules set by the hotel; and (6) for other indicated reasons.

45. Defendant's conduct was a competent cause and substantial factor in causing her severe and permanent injuries including but not limited to personal injuries including the horror of being a victim of sex trafficking as well as significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked. This trauma led to depression, anxiety disorders, and PTSD, which in turn affects daily functioning.

46. As a result of Defendant's involvement and failure to mandate, establish, and execute anti-trafficking measures and to modify their anti-trafficking efforts at the hotel property, Plaintiff was sex trafficked, sexually exploited, and victimized repeatedly at the subject hotel.

47. As a consequence of being sex trafficked at the subject hotel, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, and psychological injuries as the result of being trafficked and sexually exploited at the subject hotel in violation of 18 U.S.C. § 1591.

**TOLLING OF LIMITATIONS**

48. Plaintiff was under the control, coercion, and manipulation of her trafficker through at least 2016, and as a result, Plaintiff lacked the information and capacity to understand her injuries and their legal causes.

49. Thus, Plaintiff did not discover and could not reasonably have discovered the legal cause of her injury — through no fault of her own — and lacked the information and understanding to bring a claim because she did not know both her injury and the cause of her injury. This lack of information was a direct result of Plaintiff being kept under the control, coercion, and manipulation of her trafficker, which Defendant facilitated.

50. At the time Plaintiff was harmed, she did not know that she was the victim of human trafficking as that term is defined by law, that her injury arose from being "trafficked" at Defendant's hotel or that she was a person "trafficked," much less that she was the "victim" of a legal venture involving Defendant, and she did not discover and was not in a position to discover the legal cause of her injury for years after her trafficking ended.

51. To the extent Defendant asserts an affirmative defense of limitations, Plaintiff invokes the doctrine of equitable tolling because, as a result of being a victim of trafficking, Plaintiff faced extraordinary circumstances, which arose through no fault of her own, that prevented her from filing a lawsuit, and those circumstances did not end more than 10 years before Plaintiff filed this lawsuit.

52. While under the control of her trafficker through at least 2016, Plaintiff did not have the freedom to investigate her claims, to identify those responsible, or to seek legal representation necessary to pursue her legal rights. Plaintiff could not have pursued her claims while under the active control of her trafficker despite the exercise of ordinary diligence.

53. To the extent Defendant asserts an affirmative defense of limitations, Plaintiff invokes the continuing violation doctrine because this lawsuit arises out of a pattern of continuous and ongoing tortious conduct by Defendant.

54. Plaintiff was subject to continuous trafficking at the subject hotel through at least 2016, which is not more than 10 years before Plaintiff brings this lawsuit.

55. This continuous trafficking resulted from Defendant's facilitation of trafficking at the subject hotel as described above.

56. The TVPRA's ten-year limitations period, 18 U.S.C. § 1595(c), is subject to equitable tolling. *See Arellano v. McDonough*, 598 U.S. 1, 6–7 (2023), in which the Court emphasized the "hornbook law" presumption that federal statutes of limitations are subject to tolling unless Congress clearly states otherwise. *See also Doe v. G6 Hospitality Franchising LLC*, et al., No. 3:25-cv-00770, Document 53 (N.D. Tex. 2025).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant as identified in the above-referenced Count and as follows:

a. All available compensatory damages for the described losses with respect to the above cause of action;

b. Past and future emotional distress;

c. Consequential and/or special damages;

d. All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

e. Physical pain and suffering;

f. Disgorgement of profits obtained through unjust enrichment;

g. Restitution;

h. All damages allowable under the TVPRA;

i. Reasonable attorneys' fees and costs as allowable under 18 U.S.C. § 1595;

j. Punitive damages with respect to each cause of action;

k. Costs of this action; and

l. Pre-judgment and all other interest recoverable.

**DEMAND FOR JURY TRIAL**

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: June 3, 2026

RESPECTFULLY SUBMITTED,

/s/ Jason Byrd
Jason Byrd
THE BYRD LAW FIRM
448 Orleans
Beaumont, TX 77701
Telephone: (409) 924-0660
Facsimile: (409) 924-0035
jason@txbyrd.com

Randolph Janis
Randolph Janis, Esq.
DOUGLAS AND LONDON, P.C.
One State Street, 35th Floor
New York, NY 10004
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
rjanis@douglasandlondon.com

Chloe Makowsky
Chloe Makowsky, Esq.
DOUGLAS AND LONDON, P.C.
One State Street, 35th Floor
New York, NY 10004
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
cmakowsky@douglasandlondon.com

Attorneys for Plaintiff